WOODLOCK, Respondent, vs. TOWN OF MINOCQUA, Appellant.

*October 29—November 15, 1910.*

*Village plat: Width of streets: Shore line of lake as boundary: Dedication: Intent: Subsequent quitclaim deed.*

The recorded plat of a village shows that by the survey it embraced all the land lying between certain definite lines and the shore of a lake and that the shore line formed a part of the boundary of the land platted.   The location of "Park Avenue" is indicated on one side by the lines of the blocks abutting thereon and on the other side by the irregular shore line of the lake, except that a small portion of the avenue lies between two blocks and is there marked as sixty feet wide.   The width of the other portions of the avenue is not indicated by figures on the plat, but the width of the other streets is so marked. The name of the avenue is printed nearly midway between the shore line and the block lines, and not, as in the case of other streets, in the center of a street sixty feet wide.   The situation and location of the lots and blocks fronting on the avenue evinces a plan to provide for a wide avenue along the lake shore for the use of the public, to afford access to the water, and for the parking of the lake shore; and the unrestricted and open use of the whole place by the public and the conduct of the dedicator after the platting harmonize with that idea.   The only evidence to the contrary is a quitclaim deed given by the

dedicator about sixteen years after the land was platted, pur-porting to include unplatted lands lying between the avenue and the lake, but such deed recited that "the grantor makes no representations whatever as to the title to the lands herein described." *Held*, that except as to the small portion above mentioned Park Avenue extends to the water's edge and embraces all land between the shore line and the opposite blocks.

'APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Reversed.*

In 1888 Henry C. Payne, as trustee, made and had recorded a plat of the unincorporated village of Minocqua, situated in the defendant town. A copy of the plat, omitting most of the subdivisions of the blocks and other nonessential details, appears on page 71.

The surveyor's certificate states that he had surveyed, staked out, and mapped by order and direction of Henry C. Payne:

"All those parts of government lots Four (4), Five (5) and Six (6) of Section Fourteen (14), Township Thirty-nine (39) north, Range Six (6) east of the fourth principal meridian enclosed within the following described boundary lines, viz.: Beginning at a point marked by an iron monument on the north line of said government lot five (5) distant 223 6/10 feet east of the northwest corner of said lot 5; Thence running east along said north line a distance of 722 8/10 feet; Thence deflecting 81° 05′ right and running south 8° 55′ east a distance of 676 5/10 feet to the shore of Lake Kawaquesage; Thence following the shore line a generally southwesterly direction to a point which is 100 feet south of the center line of the Chicago, Milwaukee and St. Paul Railway, as now established and constructed, measured at right angles thereto from station 2850-09; Thence running a distance of 1002 feet to the point of beginning."

On February 23, 1904, Henry C. Payne made a quitclaim deed to the plaintiff of the following lands:

"All of that part of Government Lot No. 4, Township No. 39, Range 6 East (unplatted) laying west of Park Avenue and North of Milwaukee Street, and South of Front

Street in the Village of Minocqua, Vilas County, Wisconsin. All of that portion of Government Lot Number 5, Township No. 39, Range 6 East (unplatted) lying South and West of Park Avenue and West and North of Lot No. 6, Block No. 13, Village of Minocqua, Vilas County, Wisconsin. All of that portion of Government Lot No. (5) five, Township 39, Range 6 East (unplatted) laying South and East of Park Avenue and East and North of Lot One (1), Block 13, Village of Minocqua, Vilas County, Wisconsin."

The deed also contains the following: "It is understood that the grantor makes no representations whatever as to the title to the lands herein described."

The plaintiff brings this action in ejectment to obtain possession of the parcels of land described in his deed, on the theory that these lands were reserved by Henry C. Payne when the plat was recorded and were not dedicated to the public by the plat, and that Park avenue is nowhere to exceed sixty feet wide, or the ordinary width of streets in such plat.

On the plat of the village Front street is marked as being fifty feet wide. Oneida street in one part is shown as seventy feet wide and in another part as sixty feet wide. The middle portion of that part of Park avenue which lies between blocks 12 and 13 is marked as sixty feet wide. At the ends of this portion of Park avenue the street is apparently less than sixty feet wide. The width of the rest of Park avenue is not indicated by any figures. The one side thereof is defined by the block lines of the blocks fronting thereon, and the opposite side of the street has no line or limit indicated inside of the shore line of the lake. The name "Park avenue" is printed nearly midway between the shore line and the block lines and not in the center of a street sixty feet wide from the block line fronting thereon, as is the case with the other streets of the plat. The rest of the streets of the village are shown as being sixty feet wide.

There was evidence before the court to show that the lands in controversy were not assessed or taxed after the plat was recorded; that Henry C. Payne refused to consider a sale of

the lands in controversy and stated that they were parts of Park Avenue; that the land near the lake shore opposite block 1 had been used by the town as a site for a water-pumping plant and that the town had piled wood upon it; that the

town had placed logs along this part of the shore and had done some riprapping there to protect the shore from the action of the waters; that after the wood was removed the town officers had the ground cleaned up, raked off, and leveled; that the town officers had placed logs and done some riprapping along the shore of the lake opposite blocks 8 and 9; that the town officers had permitted the construction and maintenance of a boathouse and landing on the land north and west of block 13;

that boathouses were built by private parties on the shore opposite blocks 8, 9, and 11; and that the public had been accustomed to cross over and use the land between blocks 1, 8, 9, 11, and 12 and the lake shore for landing purposes.

By agreement of the parties a jury was waived and the action was tried by the court. The court found that there was no dedication of the lands in controversy for public purposes under the plat; that no intention to dedicate these lands had been affirmatively shown; that the plat did not operate as a grant or dedication to public use of the parcels of land described in the deed from Payne to the plaintiff; that Park avenue was intended to be of a width not exceeding sixty feet, to be measured from the block line of the blocks abutting thereon; that the defendant had no interest in or right to the possession of the premises covered by the deed; and that the plaintiff was entitled to the possession thereof and damages for the unlawful withholding thereof, and to his costs and disbursements. This is an appeal from the judgment on the findings of the court.

For the appellant there were briefs by *John Van Hecke,* attorney, and *Wm. E. Fisher,* of counsel, and oral argument by *Mr. Van Hecke.*

For the respondent there was a brief by *F. J. & A. H. Smith,* and oral argument by *F. J. Smith.*

SIEBECKER, J. The question presented by the record is whether Henry C. Payne, as trustee, granted and dedicated the lands in dispute to the public by the recorded plat of the village of Minocqua. This question is whether it was intended to include them in the plat as part of Park avenue. The map of the plat gives the courses and measurements of the boundary lines of the land embraced in the plat and the subdivisions thereof into lots, blocks, and streets, as surveyed and marked on the land and as they are represented on the recorded plat. Such platting, therefore, implies that the land

had been surveyed and that such survey located and identified
by boundary lines the land embraced therein, that it located
and identified the lots, blocks, and streets thereon, and that
such surveyed location and identification of the land and the
divisions into blocks and streets are evidenced by the lines and
figures represented on the recorded plat.   From this recorded
plat it appears that the plat of ground surveyed embraced all
the land lying between certain definitely established survey
lines and the shore line of Lake Kawaguesage, and that the
shore line formed part of the boundary of the land platted.
On the recorded plat the original location of Park avenue is
indicated on the one side by the block line of the blocks abut-
ting thereon; the opposite side thereof by a line representing
the shore line of the lake.   This line also represents the
boundary of the land, platted as terminating on the shore of
the lake.   These representations on the recorded plat, in con-
nection with the lines indicating the location of blocks, lots,
and public streets, tend to show that Park avenue was platted
and located as including the land lying between the lake and
the opposite block line abutting thereon on each side of
block 13.   This shows that it extended to the water's edge and
embraced all the land between the shore and the opposite
blocks.   Furthermore, the name "Park avenue" and its loca-
tion on the recorded plat imply that it is a public thorough-
fare of larger dimensions than the ordinary platted street.
Again, the lines and location of that portion of this avenue be-
tween blocks 12 and 13 and the figures thereon indicate that
this portion of the avenue only was to be limited to the width
of sixty feet and that the avenue expanded at each end of this
portion and extended to the shore line.   In addition to the
foregoing evidential inferences from the recorded plat, the sit-
uation and location of the lots and blocks fronting on Park
avenue, as represented, evince a plan in platting this ground
providing for a wide avenue along the lake shore for the use
of the public, to afford access to the water, and for the parking

of the lake shore. The irregularities of the shore and the omission of the figures indicating the width thereof in feet, as is done with the other streets, sustain this view. The unrestricted and open use of all of this land by the public and the conduct of the dedicator after it was platted harmonize with the idea that this disputed land was embraced in the recorded plat as "Park avenue." The only evidence in conflict therewith is the subsequent quitclaim deed, executed by the person who platted the land, of certain alleged unplatted portions of the ground located within the limits of Park avenue as above described. This deed contains the following declaration: "It is understood that the grantor makes no representations whatever as to the title to the lands herein described." This is of significance as tending to show that the grantor entertained a doubt as to whether he had any title to the land embraced in the deed. The evidentiary force of the recorded plat is so clear as to be well nigh conclusive to the effect that the land which it was sought to convey by this deed is included in the village plat of Minocqua and was platted as Park avenue, and hence was dedicated to a public use.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment for the defendant.

BARNES, J., took no part.